## WILLIAM B. SPENCER *vs.* HARTFORD, PROVIDENCE, AND FISH-KILL RAILROAD COMPANY.

A railroad corporation held liable in damages for building a bridge across a river with a pier turned obliquely to the course of the river, in such manner as to turn the water of the stream, in time of freshets, upon the plaintiff's grass land, thereby throwing sand and earth upon it, and gullying and washing away the same, it appearing that the bridge could, at an additional expense, have been erected with safety to the railroad, in such a manner as not to injure said land. *Held, further,* that the plaintiff was not estopped from maintaining his action for the damage so caused to his land, by reason of having previously, by deed, conveyed to the said railroad corporation a portion thereof, for the purposes of a railroad, and, in consideration of the purchase money, released all claims for damages which might be awarded by commissioners, inasmuch as the commissioners could have appraised and awarded only such damages as would have resulted from the construction and use of the road in a legal and proper manner.

ACTION OF THE CASE, alleging negligence and carelessness on the part of the defendants, in the construction of a railroad bridge over the Pawtuxet River, near Natick, R. I. The case was heard by the court upon the facts as reported by the auditor to whom it had been referred. The essential parts of his report are stated in the opinion of the court.

*James Tillinghast*, for the plaintiff. I. The injury here complained of could not have been included in damages assessed under the defendants' charter. And by no possible construction can they be held to have been released by the plaintiff's deed ; particularly as that is expressly confined to damages "*within the lines*" of the road, and the auditor's report finds that it was understood by the plaintiff that these damages were not to be released, and he therefore settled with the defendants for a less sum than he otherwise would. The defendants, therefore, cannot set up their charter in bar, and the plaintiff's right of action remains as at common law.

See defendants' charter, §§ 1 and 7 ; Schedule Gen. Assembly, June, 1846, pp. 36–40 ; *Hooker* v. *New Haven & Northampton Co.* 14 Conn. 146 ; *Whitcomb* v. *Vermont Central R. R. Co.* 25 Vt. 49 ; *Sabin* v. *Vermont Central R. R. Co.* 25 Ib. 363 ; *Troy* v. *Cheshire R. R. Co.* 3 Foster (23 N. H.), 183 ; *Lancashire & Yorkshire R'y. Co.* v. *Evans*, 15 Beav. 322 ; *Lawrence* v. *Great Northern R'y. Co.* 16 A. & E. 643 ; *Trenton Water Power Co.* v. *Chambers*, 1 Stock. 471 ; *Waterman* v. *Conn. & Pass. River R. R.* 30 Vt. 610.

II. Were this otherwise, the auditor's report shows such carelessness and negligence on the part of the defendants in building this bridge as to render them liable to this action, particularly as their attention was expressly called to it, that if built in the way it was it would probably cause this damage, and they took no precautions to guard against it.  Cases *supra*.  Also, *Perry* v. *Worcester*, 6 Gray, 544; *Boughton* v. *Carter*, 18 John. 405; *Thatcher* v. *Auburn & Syracuse R. R. Co.* 25 Wend. 462; approved and followed in *Brown* v. *Cayuga R. R. Co.* 2 Kernan, 486; *Schuylkill Navigation Co.* v. *McDonough*, 33 Pa. State, 73; *Ten Eyck* v. *Delaware & Raritan R. R. Co.* 3 Harring. (Del.) 201; *Tinsman* v. *Del. & Belvidere R. R. Co.* 2 Dutcher, 148; *Morris Canal & Banking Co.* v. *Ryerson*, 3 Ib. 457; *Bagnall* v. *London & N. W. R'y. Co.* 1 H. & C. 542.

*Currey*, for the defendants.  I. The injury complained of is not that direct and immediate consequence which the defendants were bound to take into account in making the necessary erections for the support of their bridge.  *Henry* v. *Vermont Central R. R. Co.* 3 Vt. 638.

II. As regards the defendants' liability as affected by the plaintiff's relation to the construction of the bridge, as grantor of the premises for that purpose : 1st. The plaintiff, being owner of the land where the offending pier is erected, conveyed it to the defendants for the express purpose of the erection of the pier, and in that part of the river where it is erected.  2d. The plaintiff is precluded from maintaining this action by his deed of right of way, unless he can show the defendants guilty of carelessness and negligence in the mode of constructing this pier.

The release from damage expressed in the deed contains the words, "for all awards of commissioners," because the commissioners had or might have awarded damages as provided by the charter.  If the commissioners had awarded damages, as they in fact had done, their award included not only a compensation for the land taken, but all such incidental damages as might reasonably result from the construction of the road in any manner authorized by the charter ; and if they had not awarded the damages, this clause of the deed must be construed as meaning all such damages as they might include in their award.  If therefore the damage complained of in this case was not included in this

release, it was because it was too remote to be taken into account, or form the subject of a settlement, and was therefore excluded as *damnum absque injuria*.  *Clarke* v. *Han. & St. Joseph R. R. Co*. 30 Mo. 202 ; *Culcough* v. *M. & M. R. R. Co*. 2 Head, 171.

POTTER, J. This is a suit against the Hartford, Providence, and Fishkill Railroad Company, for negligently and carelessly building a bridge across the river at Natick in such a manner as to turn the water of the stream, in time of freshets, upon the plaintiff's grass land, throwing sand and earth upon it, and also for gullying and washing away said land.

It was referred by consent to S. W. Peckham, Esq., as auditor, to report the facts, to be used with the effect of a special verdict, and to be heard by agreement by the court.

And the auditor reports, that the pier complained of is built in the bed of the river, at right angles with the direction of the road, but obliquely to the course of the river ; that formerly, in time of freshets, the water spread over the meadows, and meeting with the water from the ponds below, caused still water there, and was a benefit to the land from its deposits rather than an injury ; but that now, in times of freshets, the water striking this pier is turned from its natural course upon the plaintiff's land, and has heaped up sand in different places, killing the grass and changing the level ; and also that a hole in the bank has been caused by the agency of the water so turned, and the bed of the river below the pier has in some places been filled up by the eddies produced ; that the bridge was so built because it was considered stronger and safer, and less expensive with the same strength ; that a pier in the direction of the stream would be longer and require more masonry ; and that it is better to have the piers at right angles with the road, so that the wheels on both sides of the engines may strike simultaneously ; and that otherwise the strain is unequal, and the tendency is to produce a rocking motion ; that the land was not thought of and no precaution taken to prevent its washing away ; that if the engineer had been told he must protect the land, he would have made a different arrangement, such as a water-wall, &c.  It also appeared that there were on the defendants' road several bridges over streams, built angling with the stream — one at Quidnick, built angling,

so as to favor the entrance of the water into a mill canal ; one at Anthony, another at Willimantic, and others not named ; that there is no difficulty at Quidnick or Anthony on account of rocking motion, and if the Natick bridge were built in the same way there would be no practical difficulty in running trains ; that it would cost more and not be so good, but there would be no danger in so placing it ; that the plaintiff informed the engineer when he was placing the pier that it would turn the water on his land, and the counsel for the defendants contended it would not ; and the plaintiff understood that such injury was not included in the damages agreed upon.

On the 20th of May, A. D. 1853, the plaintiff by deed conveyed to the defendants the strip of land taken for their road, and released his claim for damages for earth taken and to be taken for completing the embankment, " said sums of money being in full satisfaction and discharge of all awards of commissioners and all damages within the above described lines, and for the lands and earth and borrowing earth and gravel." The railroad company. were to construct a passway at least five feet wide, for cattle, under the bridge on the bank of the river.

. It was contended for the plaintiff, that his deed to the railroad company conveyed to them the right of way, and only released; the damages within certain lines ; that the damages now sued for could not have been assessed by the commissioners under the. charter of June, A. D. 1846, § 1 and § 7, which provide only for damages by taking land or materials. It was further contended. that the auditor's report showed that other bridges had been. built with slanting piers, and that they might have been so built without great increase of expense, and that the defendants might have prevented the injury by other means ; that their attention. was called to it at the time of building the pier, but they went on. to build the pier in disregard of this caution from the plaintiff.

It was contended on the part of the defendants, that the deed was intended to release all damages which commissioners might have awarded ; that the bridge was a lawful structure, and this mode of building was necessary ; that no negligence was chargeable to the defendant ; and that it was therefore *damnum absque injuria ;* and further, that the damages were not the obvious con-

sequence of building the bridge, and were too remote to be considered.

This is a case where damage is claimed to be done to the same tract of land, a portion of which was taken for the railroad.

Does the deed convey to the defendants any greater rights than they would have had if the land had been regularly taken in the mode provided by their charter? We think not. The deed conveys the land to them for the purposes of a railroad, and of course would authorize them to build a bridge and run engines over it, and to do in a proper and lawful manner whatever was necessary for these purposes. It covers what the commissioners might have assessed, and cannot, we think, be construed to embrace anything more.

But if the land had been taken under the charter, and damages appraised, the commissioners could have appraised only such damages as would have resulted "from the construction and use of the road in a legal and proper manner." Redf. on Railways, ch. 11, § xii. p. 74. Obstruction of access from one part of the land to the other is one of the most obvious cases, and which would be admitted to come properly under this definition.

That the defendants had a right to erect a bridge at this place is not disputed. Was it necessary to erect it in the way they did?

We think the auditor's report satisfactorily disposes of this question, and shows that the bridge could have been erected, with safety to the railroad, in such a manner as not to injure the plaintiff.

If they could have built the bridge in such a manner as not to injure the plaintiff they were bound to do it.

The judgment must therefore be for the plaintiff, that the defendants are liable for damages, to be assessed by a jury, according to the agreement under which it was referred.

*Judgment for plaintiff.*